IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY H.,

            Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

CIVIL ACTION FILE NO.

1:17-CV-4203-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied his disability

application. For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance

benefits on April 23, 2014, alleging that he became disabled on October 1, 2013.

[Record ("R.") at 20, 168-69]. After Plaintiff's application was denied initially and

upon reconsideration, a hearing was held by an Administrative Law Judge ("ALJ") on

July 19, 2016. [R. at 20, 35-64]. The ALJ issued a decision denying Plaintiff's claim on September 14, 2016, and the Appeals Council denied Plaintiff's request for review on August 30, 2017. [R. at 1-6, 20-29]. Plaintiff filed a complaint in this court on October 24, 2017, seeking judicial review of the Commissioner's final decision. [Doc. 3]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has affective disorder, anxiety disorder, substance abuse (not material), and residuals of right shoulder arthroscopy and decompression. [R. at 22]. Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 23-24]. The ALJ found that Plaintiff is unable to perform any of his past relevant work. [R. at 28]. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 28-29]. As a result, the ALJ concluded that Plaintiff has not been under a disability from October 1, 2013, the alleged onset date, through the date of the ALJ's decision. [R. at 29].

2

The decision of the ALJ [R. at 20-29] states the relevant facts of this case as modified herein as follows:

The claimant has been diagnosed with major depressive disorder, recurrent, moderate and generalized anxiety disorder. (Exhibit 5F at 4). At the psychological consultative examination on July 30, 2014, the claimant reported difficulties with depressed mood, diminished interests, difficulty sleeping, fatigue, diminished ability to think or concentrate, and forgetfulness. (Id. at 2). At the consultative examination, he appeared depressed and anxious with a restricted affect and a slightly withdrawn interpersonal style. (Id. at 3, 4). The claimant was hospitalized in April 2014 and twice in August 2015 after overdosing on prescription medication. (Exhibit 13F at 4; Exhibit 12F at 8, 39). The claimant has a history of substance abuse, specifically prescription medication abuse. At his hospitalization in April of 2014, the claimant was noted as having a history of abusing prescription medication and had detoxed from his medications prior to his hospitalization. (Exhibit 14F at 4). At his hospitalization on August 14, 2015, the claimant's wife reported that he was missing Amitriptyline and Percocet pills. (Exhibit 12F at 38).

The claimant has a lengthy history of right shoulder pain with complaints of pain going back to 2011. (Exhibit 1F). On August 18, 2011, the claimant underwent right

AO 72A
(Rev.8/82)

shoulder arthroscopy and subacromial decompression surgery. (Exhibit 2F at 2). The claimant has continued to allege chronic pain in his right shoulder with pain management visits. In March 2012, the claimant had only 50% rotation with moderate pain in his right shoulder. The claimant was prescribed Lortab for his shoulder pain. (Exhibit 7F at 16, 20). In September 2012, the claimant again continued to report pain in his shoulder despite his surgery the year before. (Id. at 22). In January 2013, the claimant wanted to discuss additional pain medication and was prescribed Percocet. (Exhibit 7F at 25). The claimant has consistently had poor range of motion in the right shoulder in April 2013, July 2013, and October 2013. (Id. at 29, 31, 38). In October 2014, the claimant presented with right shoulder pain and could not move his arm. (Id. at 59).

The claimant underwent a neurological evaluation with Dr. Yazan Houssami in January 2016 when the claimant was noted as having a mild hand tremor. Spiral drawing testing was consistent with "very mild action tremor." (Exhibit 16F at 4). Dr. Houssami diagnosed the claimant with a tremor, unspecified, but also noted that it was not interfering with the claimant's activities of daily living.

The claimant reported that he spends most of his time taking care of his children and is able to complete personal hygiene care such as dressing, bathing, and grooming

4

independently.  (Exhibit 5F).  The claimant also reported being able to perform household chores such as doing the dishes, laundry, preparing basic meals, shopping for groceries, and managing the household finances.  (Id.).  The claimant testified at the administrative hearing that he has difficulty engaging socially with others.  The claimant's wife testified that, in the last five or six years, the claimant was not engaging in church activities or with their children.  She also testified that he will attend family events but will not engage with the people there.  However, the claimant reported to the consultative examiner that he socializes with others a few times each week, that he has several close friends, and that his interpersonal style was generally friendly and polite and only slightly withdrawn.  (Exhibit 5F at 3).

In November 2014, the claimant reported frequent panic attacks.  (Exhibit 4E). The claimant testified at the hearing that he is unable to work due to his anxiety disorder and severe depression.  On average, the claimant has five days a week when he does not feel like getting out of bed.  The claimant further testified that, even on medication, he has panic attacks two to three times a day that last from one hour to four or five hours and that he is unable to concentrate to watch television for two hours.

The record contains four letters from the claimant's treating physician Dr. Thomas Bantly. But these letters do not include specific clinical observations or mental status exam findings. (Exhibits 8F, 9F, and 14F). In June 2014, Dr. Bantly indicated that the claimant restarted treatment in February with depressive symptoms. The physician also stated that the claimant "has had a loss of full psychological functions and appears to be unable to leave the house and deal with work related activities." (Exhibit 8F at 1). Dr. Bantly stated in a letter dated January 10, 2015, that the claimant has been on a number of medications, including fluoxetine, amitriptyline, olanzapine, mirtapeine, lithium, olanzapine, trazadone, Strattera, Seroquel, and Geodon. However, Dr. Bantly stated that these medications were unsuccessful and that the claimant developed shaking as a result of Geodon. (Id. at 2).

Dr. Bantly submitted a third letter dated April 16, 2015, which contained information from his prior two letters as well as an indication that the claimant has had only moderate success with a trial of Requip and amitriptyline 75 mg. Dr. Bantly also indicated that the claimant has continued to have tremors and that there was a concern for Parkinson's Syndrome. (Exhibit 9F). In the letter from April 2015, Dr. Bantly stated that the claimant has had a flat affect and poor cognitive abilities in addition to being unable to handle the stresses and pressures of day-to-day work activity. Lastly,

6

Dr. Bantly submitted a letter dated January 22, 2016, in which he stated that the claimant meets the requirements of Listing 12.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. Dr. Bantly also provided a summary of the claimant's condition. (Exhibit 14F). Dr. Bantly wrote that the claimant complained of increased depressive symptoms, nausea, vomiting, and abdominal pain. According to the physician, the claimant's memory and ability to sustain concentration were impaired and he developed significant cognitive side effects which resulted in his over medicating. Dr. Bantly also stated that the claimant has depression, psychomotor retardation, flat affect, anhedonia, social isolation, and memory deficiencies. (Id. at 2).

The claimant was hospitalized for overdoses of prescription medication from April 29 through May 5, 2014, for one day on August 9, 2015, and for two days on August 14, 2015. (Exhibit 12F at 3, 10; Exhibit 13F at 4). However, the record is inconsistent regarding whether the claimant had worsening depression leading to an intentional overdose or if he was having cognitive side effects leading to an unintentional overdose. (Exhibit 13F at 6; Exhibit 14F at 2). The record shows that the claimant improved with treatment during his hospitalizations and was discharged with an okay mood and appropriate affect. Thought process and content were within normal limits, and he denied any suicidal or homicidal ideation. (Exhibit 13F at 5).

7

Dr. Norman Lee performed a psychological consultative examination of the claimant in July 2014. Dr. Lee stated that the claimant was cooperative, had fair eye contact, had normal speech, had fair concentration, and was alert throughout the evaluation. (Exhibit 5F). Dr. Lee found that the claimant had depressed and anxious mood, restricted affect, and an interpersonal style that was only slightly withdrawn. Montreal Cognitive Assessment testing indicated that the claimant's global cognitive functioning was generally intact. (Id.). Dr. Lee opined that the claimant is capable of understanding, remembering, and carrying out basic and complex directions; has mild to moderate limitations in the ability to concentrate for an extended amount of time, maintain an appropriate pace, and persist on more difficult tasks; and has a satisfactory ability to interact adequately with coworkers and the general public. (Id.).

Treating physician Dr. Chris Crooker opined that the claimant is a good candidate for disability and should be allowed to apply for it. (Exhibit 15F). Dr. Crooker also stated that the claimant has been unable to use his arm since 2012 and that he has a hand tremor that makes it impossible to perform fine finger movements. Dr. John Shih performed a consultative examination on July 14, 2014, and found that the claimant had normal grip strength, normal fine and gross manipulation, and some loss of range of motion. (Exhibit 4F).

8

A State agency medical consultant at the initial determination opined that the claimant is capable of performing work at the medium exertional level with occasional overhead reaching with the right arm and that he should avoid concentrated exposure to hazards. (Exhibit 2A). A State agency medical consultant at the reconsideration determination opined that the claimant is capable of performing work at the light exertional level with frequent climbing of ramps and stairs; never climbing of ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; and frequent overhead reaching with the right arm. The claimant should avoid concentrated exposure to pulmonary irritants and hazards. (Exhibit 5A). A State agency psychological consultant opined at the initial determination that the claimant's mental impairments result in moderate restrictions in activities of daily living and difficulties in maintaining concentration, persistence, or pace. (Exhibit 2A).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

AO 72A

(Rev.8/82)

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

10

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work

AO 72A

(Rev.8/82)

experience to determine whether the claimant can perform other work besides his past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV. Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since October 1, 2013, the alleged onset date. (20 C.F.R. § 404.1571, *et seq.*).

3. The claimant has the following severe impairments: affective disorder, anxiety disorder, substance abuse (not material), and residuals of right shoulder arthroscopy and decompression. (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he must avoid climbing ladders, ropes, or scaffolding. He is limited to no more than frequent climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant may engage in no more than frequent right overhead reaching. He must avoid concentrated exposure to fumes or hazards. He is limited to simple tasks with simple instructions, with no more than occasional required public interaction,

AO 72A
(Rev.8/82)

in an environment where changes to work tasks or work expectations are introduced slowly.

6.      The claimant is unable to perform any past relevant work.  (20 C.F.R. § 404.1565).

7.      The claimant was born on November 19, 1964, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.  (20 C.F.R. § 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. §  404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix  2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2013, through the date of the ALJ's decision.  (20 C.F.R. §  404.1520(g)).

[R. at 22-29].

13

## V.    Discussion

Plaintiff argues that the ALJ's decision denying his disability application should be reversed. [Doc. 11]. According to Plaintiff, the ALJ erred when she evaluated the opinions offered by treating and consultative medical sources. [Id. at 13-19]. Plaintiff also contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints of his symptoms, including pain. [Id. at 19-20]. Plaintiff's final argument is that the ALJ failed to provide a full and fair hearing. [Id. at 21-23]. For a number of reasons, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of the application of proper legal standards.

### A.    ALJ's Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred when she afforded little weight to the opinions of treating physicians Dr. Thomas Bantly and Dr. Chris Crooker. As noted by the ALJ, Dr. Bantly wrote four letters offering his opinion about Plaintiff's impairments and limitations. [R. at 26-27, 380-84, 451-53]. In his first letter dated June 25, 2014, Dr. Bantly stated that Plaintiff had restarted treatment in February 2014 with depressive symptoms. [R. at 26-27, 380]. Dr. Bantly wrote that Plaintiff "has been tried on a number of medications" and that Plaintiff "has had a loss of full psychological functions and appears to be unable to leave the house and deal with

14

work related activities." [Id.]. The physician also stated that Plaintiff has periods of chronic anxiety and difficulties with the ability to understand, remember, concentrate, persist with tasks, and adapt and interact socially. [Id.].

In the second letter from Dr. Bantly, which was dated January 10, 2015, the physician wrote that Plaintiff attempted a number of trials of medications for depression. [R. at 26-27, 381]. These medications included fluoxetine, amitriptyline, olanzapine, mirtazepine, lithium, olanzapine, trazadone, Strattera, Seroquel, and Geodon. However, Dr. Bantly stated that these medications were unsuccessful and that the claimant developed shaking as a result of Geodon. [Id.]. Dr. Bantly indicated that he was concerned with a diagnosis of severe Parkinson's Syndrome or another neurodegenerative disease. [Id.].

The third letter from Dr. Bantly was dated April 16, 2015. [R. at 26-27, 383-84]. The ALJ noted that much of the information in this letter mirrored Dr. Bantly's prior two letters. [Id.]. Dr. Bantly also indicated that Plaintiff has had only moderate success with a trial of Requip and amitriptyline 75 mg. [Id.]. The physician again stated that Plaintiff continued to have tremors and that there was a concern for Parkinson's Syndrome or another neurodegenerative disease. [Id.]. Dr. Bantly also wrote that, while there had been some improvement, Plaintiff continued to have a flat

15

affect, was cognitively depressed, and was unable to handle the stresses and pressures of day-to-day work activity. [Id.].

In the fourth and final letter which was dated January 22, 2016, Dr. Bantly stated that Plaintiff meets the requirements of Listing 12.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 26-27, 451-53]. Dr. Bantly provided a summary of Plaintiff's condition and medical history. [Id.]. The physician stated that Plaintiff had complaints of increased depressive symptoms along with complaints of nausea, vomiting, and abdominal pain. [Id.]. According to Dr. Bantly, Plaintiff presented with varying degrees of tremors and overwhelming feelings of worthlessness, guilt, and embarrassment from losing his job and his inability to recover. Plaintiff's memory and ability to sustain concentration were impaired, and he developed significant cognitive side effects which resulted in his over medicating. [Id.]. Dr. Bantly further stated that Plaintiff has depression, psychomotor retardation, flat affect, anhedonia, social isolation, fatigue, and memory deficiencies. [Id.]. The physician opined that Plaintiff's impairments would affect the quality and accuracy standards of any job and that he would not be dependable for attendance. [Id.].

Treating physician Dr. Crooker wrote a letter "to whom it may concern" which was dated November 15, 2015. [R. at 27, 454]. Dr. Crooker stated that Plaintiff

16

suffers from a severe right shoulder disability. [Id.]. The physician reported that, although surgery was performed in 2012, it failed to improve Plaintiff's shoulder injury. [Id.]. Dr. Crooker wrote that Plaintiff "has been unable to use that arm since and has not been employed because of the injury for more than 2 years." [Id.]. Dr. Crooker also stated that Plaintiff has a hand tremor that makes it impossible for him to perform fine finger movements in both hands. [Id.]. The physician opined that because of these problems, Plaintiff "is a good candidate for disability and should be allowed to apply for it." [Id.]. Plaintiff argues that the ALJ committed reversible error when she gave little weight to the opinions of Dr. Bantly and Dr. Crooker. The court finds Plaintiff's arguments unpersuasive.

Because the determination about whether a claimant has met the statutory definition of disability is reserved to the Commissioner, a medical source's opinion that a claimant is disabled is not controlling. See 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the relevant regulations promulgated by the Social Security Administration state in pertinent part:

(2) Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

17

> medical findings alone or from reports of individual examinations. . . .
>
> > (i) Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.

The Eleventh Circuit has consistently held that opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions. See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel v. Comm'r of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting Phillips, 357 F.3d at 1241). An ALJ may

18

disregard a treating physician's opinion with good cause, but her reasons for doing so must be clearly articulated in the decision.  Id.

In the present case, the court finds that the ALJ had good cause to give little weight to the opinions of Dr. Crooker and Dr. Bantly.  See Forrester v. Comm'r of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012).  As previously noted, Dr. Crooker opined in a November 2015 letter that Plaintiff was "a good candidate for disability."  [R. at 454].  However, whether an individual is a "good candidate for disability" or has met the statutory definition of disability is not an issue for a physician to decide but is a determination that is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(d).  In addition, the ALJ correctly noted that Dr. Crooker's assertion was a "vague and conclusory statement that has little actual probative value." [R. at 27].

Dr. Crooker also opined that Plaintiff has been unable to use his right arm since 2012 due to his "severe right shoulder disability."  [R. at 454].  But as the ALJ pointed out, the medical evidence does not support Dr. Crooker's assertion.  [R. at 27].  Dr. Crooker's treatment notes indicate that Plaintiff had poor range of motion in the right shoulder due to pain in April 2013, July 2013, and October 2013.  [R. at 27, 340, 342, 349].  However, the ALJ explained that while the "medical records do show poor range

19

of motion in the right shoulder," this evidence does not support Dr. Crooker's opinion that Plaintiff has been unable to use his right arm since 2012. [R. at 27, 340, 342, 349, 454]. The ALJ also cited to the findings from Dr. John Shih who examined Plaintiff in July 2014. [R. at 27, 287-92]. Dr. Shih found that Plaintiff had some loss of range of motion in the right shoulder but that he had normal grip strength and normal fine and gross manipulation. [Id.]. The ALJ correctly noted that Dr. Shih's findings were not consistent with Dr. Crooker's assertion that Plaintiff has no ability to use his right arm. [Id.].

Dr. Crooker also asserted that Plaintiff has a hand tremor that makes it impossible for him to perform fine finger movements in both hands. [R. at 454]. However, the ALJ explained that this assertion was not supported by the findings of Dr. Yazan Houssami who conducted a neurological evaluation of Plaintiff in January 2016. [R. at 27, 456-59]. Dr. Houssami found that Plaintiff's fine motor movements were intact. [R. at 456-59]. The physician also found that Plaintiff had only a mild hand tremor and that this tremor was not interfering with Plaintiff's activities of daily living. [Id.]. In addition, as previously noted, Dr. Shih found that Plaintiff had normal grip strength and normal fine manipulation. [R. at 27, 287-92]. The ALJ had good cause for giving little weight to the opinions of Dr. Crooker.

AO 72A

(Rev.8/82)

Treating physician Dr. Bantly, as previously noted, offered his opinions about Plaintiff's impairments and limitations in four letters written between June 2014 and January 2016. [R. at 26-27, 380-84, 451-53]. But the ALJ explained that Dr. Bantly's "letters do not include specific clinical observations or mental status exam findings." [R. at 26]. The ALJ stated that she assigned little weight to Dr. Bantly's statements because they are not supported by any treatment notes. [R. at 27]. The court finds that the ALJ's explanation on this issue did not constitute error. As discussed *supra*, an ALJ may discount a treating physician's opinion if there is good cause to do so, and good cause exists when the "'treating physician's opinion was not bolstered by the evidence[.]'" <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Phillips</u>, 357 F.3d at 1241). The ALJ correctly noted that "the record is unclear how often the claimant sees Dr. Bantly for treatment or how often the claimant is observed to have these signs without supporting treatment records." [R. at 26]. Plaintiff acknowledges that Dr. Bantly did not submit any of his actual office notes in support of his four letters, and the Commissioner is not obligated to accept the opinion of a physician which is not bolstered by any treatment records. [Doc. 11 at 18].

Good cause also exists to discount a treating physician's opinion if the record evidence supports a contrary finding. <u>Winschel</u>, 631 F.3d at 1179. The ALJ explained

that one of the reasons that she assigned little weight to Dr. Bantly's statements was because they were inconsistent with the findings of Dr. Norman Lee. [R. at 27]. The ALJ's explanation is supported by the record. Although Dr. Bantly opined that Plaintiff is unable to leave the house and deal with work related activities, Dr. Lee conducted a psychological examination of Plaintiff on July 30, 2014, and observed that Plaintiff was cooperative, had fair eye contact, had normal speech, had fair concentration, and was alert throughout the evaluation. [R. at 27, 296]. Dr. Lee found that Plaintiff's interpersonal style was only slightly withdrawn and that Montreal Cognitive Assessment testing indicated that Plaintiff's global cognitive functioning was generally intact. [R. at 27, 297]. In addition, although Dr. Bantly opined that Plaintiff has difficulties with the ability to understand, remember, concentrate, persist with tasks, and adapt and interact socially, Dr. Lee's examination results and clinical observations supported a contrary finding. [R. at 26-27, 297, 380]. Dr. Lee opined, *inter alia*, that Plaintiff is capable of understanding, remembering, and carrying out basic and complex directions; that he has only mild to moderate limitations in the ability to concentrate for an extended amount of time, maintain an appropriate pace, and persist on more difficult tasks; and that he has a satisfactory ability to interact adequately with coworkers and the general public. [R. at 27, 297].

22

Plaintiff argues that it was error for the ALJ to rely on Dr. Lee's findings because his examination of Plaintiff was almost two years prior to the administrative hearing before the ALJ. [Doc. 11 at 14-15]. This argument is not persuasive. Dr. Lee's opinion and findings were based on a psychological examination that occurred during the time period when Dr. Bantly was treating Plaintiff and when the physician issued his opinion letters. Dr. Lee's examination of Plaintiff occurred in July 2014. [R. at 296-97]. This was one month after Dr. Bantly issued his first opinion letter in June 2014 and approximately five months before Dr. Bantly issued his second opinion letter in January 2015. [R. at 26-27, 296, 380, 381]. Given the fact that Dr. Lee's opinion and findings were contemporaneous with Dr. Bantly's treatment and opinions, the court finds that the ALJ did not err in relying on Dr. Lee's opinion.

In sum, "the ALJ properly explained the weight given to different medical opinions" and the record evidence supported findings contrary to those made by treating physicians Dr. Crooker and Dr. Bantly. Forrester, 455 Fed. Appx. at 902. The ALJ articulated specific reasons for giving little weight to the treating physicians' opinions, and substantial evidence supports this decision. See id.; Winschel, 631 F.3d at 1179. Accordingly, the court finds that the ALJ had good cause not to credit Dr. Crooker's and Dr. Bantly's opinions. See Leiter v. Comm'r of Social Security Admin.,

AO 72A
(Rev.8/82)

377 Fed. Appx. 944, 949 (11th Cir. 2010) ("Because the ALJ articulated specific reasons for declining to give the treating physician's opinion controlling weight, and these findings were supported by substantial evidence in the record, we hold that the ALJ had good cause to reject this opinion."); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005) (same). Remand is not warranted on this basis.

**B.     Plaintiff's Subjective Symptoms**

Plaintiff makes a brief argument that the ALJ failed to properly evaluate his subjective complaints of symptoms, including pain. [Doc. 11 at 19-20]. According to Plaintiff, he alleged suffering from depression, panic, pain, nausea, and fatigue. [<u>Id.</u> at 20]. Plaintiff argues that the ALJ did not properly evaluate these symptoms and that the "proper evaluation depends upon educated, informed judgment by medical professionals–particularly those like Dr. Crooker and Dr. Bantly who have had the chance to evaluate them over the course of several years." [<u>Id.</u>].

When a claimant seeks to establish disability through subjective testimony of symptoms, a "pain standard" established by the Eleventh Circuit applies. <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant can satisfy this standard by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the

24

objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt, 921 F.2d at 1223). "The 'pain standard' is applicable to other subjective symptoms as well." Crow v. Comm'r, Social Security Admin., 571 Fed. Appx. 802, 807 (11th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson, 284 F.3d at 1225 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: (1) daily activities; (2) location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate his symptoms; (5) treatment received, other than medication, for the relief of symptoms; (6) measures used for the relief of symptoms; and (7) any other factors concerning the functional limitations and restrictions due to the claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing

AO 72A

(Rev.8/82)

court." Foote v. Chater, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995) (citing MacGregor, 786 F.2d at 1054).

In the present case, the ALJ explained that she found that Plaintiff's "medically determinable impairments could reasonably be expected to cause only some of his alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [R. at 27]. The ALJ discussed specific portions of the record and substantial evidence supports her decision not to fully credit Plaintiff's subjective allegations. The ALJ noted that Plaintiff testified that he is unable to work due to anxiety disorder and depression and that he has trouble getting out of bed. [R. at 25, 40-49]. Plaintiff also claims that he experiences panic attacks and is unable to concentrate. [Id.]. But the ALJ explained that the medical records do not confirm these allegations. [R. at 25-26].

The ALJ pointed out that Plaintiff reported to Dr. Lee that he socializes with others a few times each week and that he has several close friends. [R. at 24, 296]. Plaintiff also denied any specific difficulties with socialization or getting along with others. [R. at 296]. Dr. Lee found that Plaintiff's interpersonal style was only slightly

26

withdrawn, that his global cognitive functioning was generally intact, and that he has a satisfactory ability to interact adequately with coworkers and the general public. [R. at 26-27, 297]. Dr. Lee also opined, *inter alia*, that Plaintiff has only mild to moderate limitations in the ability to concentrate for an extended amount of time, maintain an appropriate pace, and persist on more difficult tasks. [R. at 27, 297]. The evidence from Dr. Lee is not consistent with Plaintiff's subjective allegations.

Plaintiff also cites to the letters from Dr. Bantly, who opined that Plaintiff suffered from, *inter alia*, depression, nausea, pain, and fatigue. [R. at 451-53]. But as discussed *supra*, the ALJ specifically noted that Dr. Bantly did not provide any treatment records in support of his opinion letters. [R. at 26-27]. The ALJ also explained that the findings made by Dr. Bantly in his letters are inconsistent with the observed clinical signs and mental status exam findings made by Dr. Lee, discussed *supra*. [Id.]. Finally, although Plaintiff particularly stresses in his brief that he suffers from fatigue, the Commissioner notes that Plaintiff has failed to cite to any record evidence indicating that his fatigue results in greater limitations than those found by the ALJ. [Doc. 11 at 19-20; Doc. 12 at 17]. For these reasons, the court finds that the ALJ properly applied the pain standard and that substantial evidence supports the

27

ALJ's finding that Plaintiff's subjective allegations are not entirely consistent with the evidence in the record.  [R. at 26-27].

### C.    Full and Fair Hearing

Plaintiff's final argument is that the ALJ failed to provide a full and fair hearing. [Doc. 11 at 21-23].  Plaintiff argues that the ALJ was obligated to seek additional information from Dr. Bantly or to order another consultative examination if the ALJ was not satisfied with the lack of treatment records provided by the physician.  [Id.]. Plaintiff also contends that the ALJ erred because, at the administrative hearing, she did not solicit testimony about Plaintiff's limitations regarding the use of his arm or his abdominal pain, nausea, and vomiting.  [Id.].  According to Plaintiff, the ALJ's decision should be reversed because she did not provide a full and fair hearing.  [Id.]. The court disagrees.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  However, the Eleventh Circuit has held that an ALJ is not required to order a consultative examination or other evidence "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."  Ingram v. Comm'r of Social Security Admin., 496 F.3d 1253, 1269 (11th

Cir. 2007). Substantial evidence supports the ALJ's conclusion that she had sufficient evidence to make an informed decision. As discussed previously, in addition to the records and opinions from treating sources, the ALJ discussed and relied upon the findings from Dr. John Shih, who performed a consultative examination of Plaintiff in July 2014, Dr. Norman Lee, who conducted a psychological examination of Plaintiff in July 2014, and Dr. Yazan Houssami, who conducted a neurological evaluation of Plaintiff in January 2016. [R. at 27, 287-92, 294-98, 456-59]. The ALJ also discussed and gave substantial weight to the opinions of State agency medical consultants who issued their opinions at the initial and reconsideration determinations. [R. at 27-28, 66-78, 81-94]. The record before the ALJ contained enough evidence for her to make an informed decision. Accordingly, the court finds that Plaintiff has failed to show that the ALJ was required to order an additional consultative examination. See Johnson v. Comm'r, Social Security Admin., 618 Fed. Appx. 544, 551 (11th Cir. 2015) ("Where the record contains sufficient evidence to allow an informed decision, however, the duty to fully and fairly develop the record does not impose the requirement to order a consultative examination."); Cooper v. Astrue, 2009 WL 537148, at *7 (M.D. Ga. March 3, 2009) (noting that "an ALJ is not required to order additional consultative examinations if he does not find them necessary to make an informed decision").

AO 72A

(Rev.8/82)

With respect to Plaintiff's argument that the ALJ should have sought additional information from treating physician Dr. Bantly, the relevant regulations which were in effect when the ALJ issued her decision simply provide that the ALJ has discretion on whether to recontact a treating source. See 20 C.F.R. § 404.1520b(c)(1) ("We may recontact your treating physician, psychologist, or other medical source."). Dr. Bantly, as previously noted, did not provide any treatment records in support of his four opinion letters, and Plaintiff has failed to show that the ALJ was obligated to recontact the physician. Furthermore, the Eleventh Circuit has made it clear that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912); accord Doughty, 245 F.3d at 1278. The regulations similarly provide that the burden is on the claimant to submit evidence or inform the Social Security Administration about evidence that relates to the issue of whether he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a). Plaintiff's decision not to submit additional records in support of his claim did not impose an obligation on the ALJ to recontact Dr. Bantly when the record was sufficient for the ALJ to make an informed decision.

AO 72A

(Rev.8/82)

Plaintiff also argues that at the administrative hearing, the ALJ should have solicited additional testimony from Plaintiff about his various limitations. [Doc. 11 at 22-23]. But as the Commissioner notes, Plaintiff was represented during the administrative proceedings and his representative had a meaningful opportunity to present Plaintiff's case. [R. at 37-63, 103]. Moreover, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)). In making this determination, courts "are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Id. (citations and internal quotation marks omitted). Plaintiff was questioned thoroughly at the administrative hearing by his representative, and Plaintiff has failed to show that he has been subjected to clear prejudice as a result of evidentiary gaps in the record.

## VI.  Conclusion

For all the foregoing reasons and cited authority, the court concludes that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be

AO 72A

(Rev.8/82)

**AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.[1]

SO ORDERED, this 18th day of March, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[1]On December 26, 2018, an administrative order was issued staying this case in light of lapse of appropriations.  [Doc. 14].  The stay was lifted as of January 25, 2019.

AO 72A

(Rev.8/82)